HAMILTON *against* MYRICK AND WILLIAMSON.

ERROR *to Hempstead Circuit Court.*

An order, by which A. requests B. to pay to C. $2000, " out of the money received on my account from the Insurance Office, when collected," is not a bill of exchange, eitther by the law of England or of this State ; and an endorsement of it conveys no right of action to the endorsee.

Nor can the endorsee set off such instrument, in action by the drawer thereof against him, upon a bond or other consideration.

A bill of exchange, draft, or check, according to the Law Merchant, must be for money only, and payable at all events, and not on a contingency as to any event on which, or as to the party by or to whom, it is to be paid, or out of a particular fund.

The statute defining the term "bill of exchange," is merely declaratory of the Law Merchant.

This was an action upon a bond, executed by the defendants to the plaintiff, dated April 22d, 1839, for $2190, with interest at 8 per cent. from date, due at 12 months. The defendants craved oyer, and demurred, at October Term, 1840, and their demurrer was sustained, the declaration amended, and the case continued.

At April Term, 1841, Myrick filed his separate plea of offset, by which he alleged that the plaintiff ought not to maintain his action as to $2000 with interest and damages, because, on the 6th day of May, 1835, Hamilton made an order in writing, addressed to Brander, McKenna & Wright, requiring them to pay Ira S. Poor, or order, $2000, out of the money received on my account from the Insurance Office, when collected," endorsed by Poor, on the 8th of March, 1840, to Myrick. That Brander, McKenna & Wright did collect and receive from the Insurance Office the $2000, on the first of May, 1840; and that, on the 6th of May, 1840, the order was presented for payment, and protested, and that notice of protest was given to Hamilton; with the common conclusion of pleas of set-off in assumpsit.

To this plea Hamilton demurred, and assigned special causes of demurrer. The grounds of demurrer were, that the instrument described in the plea was not a bill of exchange; that Myrick could not sue on it, or use it as an off-set; and that the plea was separate, while the law would not permit a several debt to be set off against a joint and several one.

The Court overruled the demurrer. Hamilton then moved for final judgment against Williamson, who had not pleaded, which motion was overruled. Hamilton abided by his demurrer, and the Court gave him judgment against the defendants for $250 30, with interest; to which judgment he prosecuted his writ of error.

Pike, for plaintiff in error:

The first question is, whether, in a suit against two or more persons, on a joint or several note or bond, where one defendant makes default, the one can interpose as an off-set, by plea, a debt due by the plaintiff to himself individually.

The statute of set-off provides that where two or more persons are *mutually* indebted to each other, and one of them commences an action against the other, one debt may be set-off against the other, though such debts may be of a different nature. This provision of our statute contains, in a condensed form, the very provisions of *St.* 2 *Geo. II.*, *ch.* 22, *sec.* 13, and 8 *Geo. II.*, *ch.* 24, *sec.* 6; and decisions on one will fully apply to the other.

Under the English statutes, it is laid down that a joint debt cannot be set-off against a separate one, nor a separate debt against a joint demand, unless it is expressly agreed by the parties that such set-off shall be allowed. *Babington on Set-off*, 37. Thus, in *Ex Parte Harson*, 12 *Vez.*, 346, Lord Chancellor Erskine held, that a separate demand, due one of the defendants by the plaintiff, could not be set-off in a suit at law, against that defendant and another, for a joint debt, and that the defendant who was credited must bring his cross suit. The counsel was not hardy enough to dispute but that such was the law, but on all hands broadly admitted it. But the Chancellor admitted the set-off in *equity*, it being a case of bankruptcy, in which the rule has been relaxed by some judges. The doctrine held by these judges has however been overruled; and it is now settled law, that no debt or demand can be matter of set-off in equity, unless it is so at law. *Ex Parte Twogood*, 11 *Vez.*, 517; *Addis vs. Knight*, 2 *Meriv.*, 121; *Duncan vs. Lyon*, 3 *J. C. R.*, 351; *Dale vs. Cook*, 4 *J. C. R.*, 11; *Gass vs. Stinson*, 3 *Sumn.*, 98.

In *Walker vs. Leighton & James*, 11 *Mass.*, 140, it was decided

that where a joint and several note was sued on, one defendant could not set-off a demand due from the plaintiff to him individually. See also *Exec's of Bourne vs. Thompson et al., Coxe N. J. Rep.*, 2; *Ladue vs. Hart*, 4 *Wend.*, 583; *Warner vs. Barker*, 3 *Wend.*, 400.

So in *Woods vs. Carlisle & Farrar*, 6 *N. Hamp.*, 27, the Supreme Court of New-Hampshire held the same doctrine, and rested it on *Jones vs. Fleming*, 7 *B. & C.*, 217; *Walker vs. Leighton, ub. sup.*; *Wolfe vs. Washburn*, 6 *Cowen*, 261; *Montague*, 23; and *Sherman vs. Crosby*, 11 *J. R.*, 70. But they suggested that it might have been different, if the party pleading an off-set had appeared to be a mere surety. But a promisor in a joint and several note, or an obligor in a joint and several bond, cannot aver or show, in a suit *at law*, that he is a mere surety. He has, by his contract, admitted himself to be subject to all the legal obligations of a principal, and cannot avoid them. He is estopped from denying a character with which he has invested himself. *Theobald on Prin. and Surety*, 145, 165; *Farmers' Bank vs. Horsey & McLane*, 1 *Harrington's Rep.*, 514; *Law vs. E. S. Comp*, 4 *Vez.*, 821; *Hawkshan vs. Perkins*, 2 *Swanst.*, 550.

The plea of set-off is a plea going to the personal discharge of the party pleading it. Both the defendants in this case certainly could not have pleaded it jointly, unless they had set out an express agreement that the demand against one plaintiff, in favor of one defendant, should be an off-set for both. The statute allows no such plea, because it speaks only of *mutual* debts. Moreover, upon one defendant pleading such a plea, the plaintiff was entitled to judgment against the other, and so moved in this case, but was refused. Suppose he had taken such judgment, as he was clearly entitled to do, against Williamson. Would Williamson not have had an action against Myrick for contribution? If so, Myrick would lose the debt pleaded as offset, and also have been compelled to pay half the debt sued for. And Hamilton would recover his whole debt of Williamson, and gain as much more by the plea of set-off.

Unquestionably, when the plea was put in, he could have entered a *nolle prosequi* as to Myrick, and taken his judgment against Williamson. This is settled by the highest authority. *Minor vs. Mechanics'*

*Bank*, 1 *Peters*, 74. Having this right, how could Myrick's plea affect his right to a judgment by default against Williamson?

Again, suppose the set-off pleaded were greater than the original demand, and were pleaded by both defendants, but being the debt of but one, could both the defendants have judgment for the excess?

There is but one method of escaping these difficulties, and that is to adhere to the common law rule, that a *several* debt cannot be set-off against a *joint* or *joint and several* debt. It is a rule founded alike in law and reason. Thus, Leigh lays it down broadly in his late work on *Nisi Prius*, that, " in an action by two persons, the defendant cannot set-off a debt due to him by one of the plaintiffs; nor can one of several defendants set-off a debt due to him alone from the plaintiff." 1 *Leigh N. P.*, 157. The same doctrine is laid down by Chitty. *Chitty on Contracts*, 329. So it was decided in *Porter vs. Neckervis*, 4 *Rand.*, 359.

In Pennsylvania, where there are no Courts of Chancery, and the principles of equity are administered in suits at law, the rule has been relaxed, as in *Steward vs. Coulter*, 12 *S. & R.*, 252; *Childerston vs. Hammond*, 9 *ib.*, 379.

But this Court must be governed by decisions made by Courts proceeding strictly according to the principles of the common law, and on statutes similar to our own. Thus, in *Ross vs. Knight*, 4 *N. Hamp.*, 236, the Court held that separate debts due each defendant were not *mutual* demands, and could not be set-off in a suit against both defendants.

The very obvious reason why such a set-off could not be pleaded, is the same as is assigned under the English statutes, to wit, that as the statutes expressly confine the right of set-off to cases in which there are *mutual debts*, therefore it is clear, that as well the debt sought to be recovered as that to be set-off, *must be due in the same right*.

The principle for which we contend will also be found to be sustained in *Pitkin vs. Pitkin*, 8 *Day*, 325; *Francis vs. Rand*, 7 *Day*, 223; and *Palmer vs. Green*, 6 *Day*, 14.

That the principle is correct upon general reasons, is proven by its pervading other codes; for the law of compensation in the French Code, and the Code of Louisiana, contain the same rule. *Thomas et*

Hamilton *against* Myrick & Williamson.

*al. vs. Elkins,* 4 *Mart. R.,* 78; *Hanchard vs. Cole et al.,* 8 *Louis. R.,* 162; *Fagot vs. Porche,* 7 *Louis. R.,* 564; *Morton vs. Graham,* 11 *Louis. R.,* 453. Suppose three or four suits brought by the same plaintiff against A. and different other defendants; suppose he pleads the same off-set in each suit; how will justice be done?

There is another important point upon which the demurrer should have been sustained. What was the character of the instrument set up as the foundation of the off-set? It is one of the primary requisites of a bill of exchange, that the money must be payable at all events, not depending on any contingency, either with regard to event, or with regard to the sum out of which payment is to be made. This is the rule in England, and no instrument is a bill of exchange, where the money is payable on a contingency, or out of some particular fund. *Ch. on Bills,* 154.

Thus, an order to pay money, *provided* the terms mentioned in certain letters shall be complied with, or *provided* J. S. shall not be surrendered to prison within a limited time; *Smith vs. Boehm, Gilb. Cas.* 93; or, provided S. S. shall not pay the money by a particular day, or the like, *Roberts vs. Peake,* 1 *Burr,* 323; *Kingston vs. Long,* 4 *Doug.,* 9; *Morgan vs. Jones,* 1 *C. & J.* 162, 1 *Tyrw.,* 29; *Ex Parte Tootle,* 4 *Ves.,* 372; *Pearson vs. Garrett,* 4 *Mod.,* 242; *Colehan vs. Cooke, Willes,* 397; *Beardsley vs. Baldwin, Str.,* 1151; *Alves vs. Hodgson,* 7 *T. R.,* 242; is no bill of exchange.

So in *Hill vs. Halford,* in the Exchequer, 2 *Bos. & Pul.,* 413, a written promise to pay a certain sum, on the sale of produce, immediately when sold, of the *White Hart, St. Albans, Herts,* and the goods, was held not to be a promissory note.

And in *Dawkes vs. Lord De Loraine,* 3 *Wils.,* 207, which was an action against the drawer of a bill, by which the drawer was required, "seven weeks after date, to pay N. R. 32 pounds 7 shillings, out of Mr. Steward's money, as soon as you receive it," Lord Ch. J. DE GREY, delivering the opinion of the whole Court, said, that they were of opinion that the instrument sued on was no bill of exchange, because payable out of a supposed fund, at a future time, which was uncertain, and might or might not happen; and laid down the doctrine

to be, that the instrument which constitutes a good bill of exchange, according to the law, usage and custom of merchants, is not confined to any certain form or set of words, yet it must have some essential qualities, without which, it is no bill of exchange; it must carry with it a *personal* and *certain* credit given to the drawer, not confined to credit upon any *thing* or *fund;* it is on the credit of a *person's* hand, as on the hand of the drawer, the endorser, or the person who negotiates it; he, to whom such bill is made payable or endorsed, takes it upon no particular *event* or *contingency*, except the failure of the general *personal* credit of the *persons* drawing or negotiating the same. And he said, that in the case before him, the *drawer* did not make the writing or instrument upon his own *personal* general credit, that in all events he would be liable in case the person on whom it was drawn should not pay it out of Steward's money; but both the *drawer* and the *person* to whom payable, look only at the fund, and no *personal* credit is given to the drawer. He said it would be monstrous to make either drawer or acceptor pay it out of his own money; and that there was no case that he could find, in any book, where even an action would lie, as on a bill of exchange, where the same was payable out of a future contingent fund.

So in *Carlos vs. Fancourt*, 5 *T. R.*, 482, it was decided that a promise to pay a sum certain, " out of my money that shall arise from my reversion of £43, when sold," was no promissory note. It was placed by the Court on the same footing with bills of exchange. Lord KENYON said, " It would perplex the commercial transactions of mankind, if paper securities of this kind were issued out into the world, encumbered with conditions and contingencies, and if the persons to whom they were offered in negotiation were obliged to inquire when these uncertain events would probably be reduced to a certainty; and that if the Court were to render the point in the least doubtful, they would shake the foundation of that which had been considered as clear law ever since the time of Lord Holt."

ASHHURST, J., said, that " Certainty is a great object in commercial instruments; and unless they carry their own validity on the face of them, they are not negotiable. On that ground, bills of exchange,

which are only payable on a contingency, are not negotiable, because it does not appear on the face of them whether or not they will ever be paid."

So in *Colehan vs. Cooke, ub. sup.*, Lord C. J. WILLES laid it down, that notes payable on a contingency were not within the statute of Anne, because not negotiable *ab initio*. That statute, 3 and 4 Anne, ch. 9, makes all notes negotiable, whereby one person promises to pay to another, or to his order, or to bearer, any sum of money mentioned in such note. So by our statute, bills of exchange are declared to be " all drafts or orders drawn by one person on another, for the payment of a sum of money specified therein." *Rev. Stat.*, 151. Lord C. J. WILLES said that the statute only extended to such notes where there is an *absolute* promise to pay, and not a promise depending on a contingency, and where the money, at the time of the giving of the note, becomes due and payable by virtue thereof, and not where it becomes due and payable' *by virtue of a subsequent contingency*, which perhaps may never happen at all, and then the money will never become payable at all. And he remarked that it could never be said that there was a promise to pay money, or that money became due due and payable by virtue of a note, when, unless such subsequent contingency happen, the drawer of the note does not promise to pay any thing at all.

Just so it is in the present case under our statute. There is here no order to pay any sum of money *absolutely*, but to pay on a certain contingency, which may or may not happen, and out of a certain fund, which may or may not come to hand. This, then, is no bill of exchange, because the money does not become payable by virtue of the order, but is to be payable by virtue of the contingency, when it happens.

The contract and undertaking of the maker of a bill of exchange are conditional. He agrees to pay in case the drawee or acceptor does not, and upon *protest* and due notice, which protest and notice are to be governed by the law merchant. How can there be any regular protest or notice on such a bill, if bill it be? When should it be protested, and when should notice be given? When should the holder present it for payment? Does the maker guarantee that such fund

will ever be realized? On an ordinary bill, he guarantees that the acceptor will pay, and that the drawee will accept. Here he does no such thing. What is his undertaking in law? Nothing recognized by law so as to afford an action against him. What uncertainty and perplexity, what confusion and injustice would ensue, if such instruments were considered bills of exchange! Has this instrument been protested according to the rules of the law merchant? There are no rules in the law merchant for the protest of such instruments. Was it protested, or presented for payment, while the drawees had in hand the fund relied on? The count does not show it.

Other authority to the same point is abundant. An order to pay money out of the drawer's growing subsistence, was held no bill; *Jotclyn vs. Laserve, Fort.*, 281; 10 *Mod.*, 294, 316; or out of the fifth payment, when it should become due, and it should be allowed by the drawer; *Haydock vs. Linch, Ld. Raym.*, 1563; or out of the purchase money of the drawer's house; *Yates vs. Grove,* 1 *Ves. Jr.* 280; or out of money to arise from a reversion, when sold; *Carlos vs. Fancourt,* 5 *T. R.* 482; or out of rents or other money in the drawee's hands, *Young vs. Herle, Ld. Raym.*, 1361; or when three drafts have been paid, *Williamson vs. Bennett,* 2 *Camp.*, 418; or to pay money on account of freight, *Banbury vs. Lissett,* 1 *Str.*, 1211; *Coolidge vs. Ruggles,* 15 *Mass.*, 387.

In *Cook vs. Satterlee,* 6 *Cowen,* 108, an instrument in the form of a bill, whereby the drawers requested the drawees to pay, 90 days after date, to the plaintiff, or bearer, $400, and take up their note given to W. & H. B. Cook for that amount, was declared no bill of exchange, because a bill must be payable at all events, not dependent on any contingency, or out of any particular fund ; and because it was the same as if it had directed the amount to be paid " on his giving up our note." So in *Atkinson vs. Manks,* 1 *Cowen,* 707, the Court of Errors said that an order for "£1642 proceeds of goods," would not be a bill of exchange, because payable on a contingency, and out of a particular fund.

It is not necessary that we should go into a more extended examination of the authorities, to show that the demurrer on this ground should have been sustained.

TRAPNALL and COCKE, *Contra:*

RINGO, C. J., delivered the opinion of the Court :

The plea of set-off certainly fails to disclose any contract between Hamilton and the defendant Myrick; and the writing therein described is not such an instrument as is recognized by the law merchant, as negotiable according to the custom of merchants; nor is it such a contract in writing as may be assigned by virtue of the provisions of any statute in force in this State, either at the date of the writing, or at the time when the assignment thereof is alleged to have been made. It is not within the law merchant, or to be governed by the principles thereof, because every bill of exchange, draft, or check, according to the custom of merchants, must be for money only, and be payable at all events, not depending on any contingency, either with regard to any event, or with regard to the fund out of which payment is to be made, or the parties by or to whom the payment is to be made. And the writing described in the plea, requires the sum of money therein mentioned to be paid only out of a particular fund, and upon a future contingency, which might never happen. The adjudications establishing this principle are numerous, and of the most unquestionable authority; and it is believed that few if any decisions contrary thereto can be found. All paper of this character is designed to foster credit, and encourage trade; and hence it is, that the law has attached to it certain properties not given to any other species of security; and although no set form of words is required in the creation of such instruments, yet they must have some essential qualities, without which they are not considered within the operation and protection of the law merchant. The essential qualities of every such instrument are, that it be payable at all events, not depending on any contingency, nor payable out of a particular fund; and that it be for the payment of money only, not for the performance of any other act, or in the alternative. When so made, it carries with it a personal and certain credit given to the drawer, not confided to credit upon any particular thing or fund. It rests upon the general credit of the drawer, the endorser, or person who negotiates it; and he, to

whom such instrument is made payable or endorsed, takes it upon no particular event or contingency, except the failure of the general personal credit of the persons drawing or negotiating the same.

In this case, Hamilton did not make the instrument in question upon his own personal general credit, that in all events he would be liable, should Messrs. Brander, McKenna & Wright not pay it out of the money received on his account from the Insurance office, when collected; but both Hamilton, the drawer, and Poor, to whom or to whose order the money is required to be paid, looked only at the fund drawn upon, and not to the general personal credit of the drawer. Consequently, the instrument in question was not drawn or negotiable according to the law, usage, and custom of merchants, and the endorsement thereof by Poor to Myrick, did not confer upon the latter any legal right to the instrument, so as to enable him to demand or receive payment thereof, or maintain any action at law thereupon, in his own name, against the drawer. See *Dawkes vs. Lord De Loraine*, 3 *Wils.* 207; *Cook vs. Satterlee*, 6 *Cowen*, 108; *Carlos vs. Fancourt*, 5 *T. R.* 482; *Colehan vs. Cooke, Willes*, 397; *Chitty on Bills*, 154.

These principles are not, as we conceive, in any manner changed or affected by any thing contained in the 13th section of chapter 20 *Rev. St. Ark.*, 151, which declares, that "The term 'bill of exchange,' as used in this act, shall be so construed as to include all drafts or orders drawn by one person on another, for the payment of a sum of money therein specified;" because it is only declaratory of the law as it stood previously, and was inserted under the apprehension that such drafts and orders as are not in strictness embraced by the term " bill of exchange," might otherwise be considered as not within the provisions of that statute, as the language used applies in express terms to bills of exchange only.

Nor is the instrument in question embraced by the old statute of assignments, (*Ark. Dig.*, 74,) nor any of the provisions contained in chapter 11 of the *Rev. St. Ark.*, 107; because it is not a contract or agreement in writing, for the payment of either money or property, but simply an order to a third party, to pay to the payee, or his order, a specified sum of money, out of a particular and specified fund of the drawer, which it was contemplated would, at some subsequent period,

Hamilton *against* Myrick & Williamson.

be collected by the drawees. It contains no stipulation whatever for the payment of the sum of money therein mentioned, by the drawer or any other person, to the payee or any other person whatever, and therefore it is not such an obligation as is assignable by virtue of any of the provisions of either of the statutes aforesaid, and cannot, by reason of the endorsement and assignment thereof by the payee to Myrick, create any legal debt or obligation in favor of the latter against the drawer; and for this reason, the plea must be adjudged insufficient in law to entitle the defendant, Myrick, to have the amount of money in said order mentioned set-off against the demand of the plaintiff.

Having thus disposed of this question, it becomes unnecessary for us to consider or determine the other questions presented by the record.

Judgment reversed, and case remanded, with instructions to sustain the demurrer to the plea of set-off, and for further proceedings.